## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| OVIDIO FERNANDEZ and BARBARA LAUDE, *on behalf of themselves and all others similarly situated*,<br><br>　　　Plaintiffs,<br><br>v.<br><br>ERNEST HEALTH, INC., REHABILITATION HOSPITAL OF SOUTHERN NEW MEXICO, and REHABILITATION HOSPITAL OF THE NORTHWEST, LLC,<br><br>　　　Defendants. | Case No. 3:24-cv-00973<br><br><br><br><br><br><br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Ovidio Fernandez and Barbara Laude, individually and on behalf of all similarly situated persons, allege the following against Defendants, Ernest Health, Inc. ("Ernest Health") Rehabilitation Hospital of Southern New Mexico, Inc. ("RHSNM"), and Rehabilitation Hospital of the Northwest, LLC ("RHN") (collectively, "Defendants"), based on personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents, as to all other matters:

## I.  INTRODUCTION

1.　　Plaintiffs brings this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similarly situated consumers' ("Class Members," as defined *infra*) sensitive protected health information ("PHI") provided to Defendants, including names, addresses, dates of birth, driver's license numbers, medical record number, claims data, diagnosis, and prescription information. (personally identifiable information or "PII," and

1

collectively with PHI, "Private Information").

2.      Ernest Health is a "network of rehabilitation and long-tern acute hospitals" with locations throughout Arizona, California, Colorado, Idaho, Indiana, Montana, New Mexico, Ohio, South Carolin, Texas, Utah, Wisconsin, and Wyoming.[1]

3.      RHSNM provides specialized inpatient and outpatient rehabilitative services to its patients, serving the communities of Southern New Mexico. Its hospital is located in Las Cruces, New Mexico. RHSNM is a member of Ernest Health.[2]

4.      RHN specialized inpatient and outpatient rehabilitative services to its patients, serving, serving the communities of Kootenai County, Idaho, and surrounding areas.[3]

5.      Defendants received Plaintiffs and Class Members' Private Information in their provision of health care services to their current and former patients.

6.      By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

7.      On or about March 29, 2024, Defendants announced that they were the victim of a data security incident. The Private Information of 5,466 individuals is believed to have been exposed by the Data Breach.[4]

8.      Defendants failed to adequately protect Plaintiffs' and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive information. This unredacted Private Information was compromised due to Defendants' negligent and/or careless

---

[1] https://ernesthealth.com/about-us/.
[2] https://rhsnm.ernesthealth.com/about-us/.
[3] https://rhn.ernesthealth.com/about-us/.
[4] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

acts and omissions and  their utter failure to protect their patients' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members' Private Information because of their value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

9.       Plaintiffs bring this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts at least to negligence and violates federal and state statutes.

10.       Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party.

11.       Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

12.       Plaintiffs and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual

consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) actual misuse of their personal information consisting of an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

13.     Plaintiffs and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data security practices.

## II.  PARTIES

14.     Plaintiff Ovidio Fernandez is, and at all times mentioned herein was, an individual citizen and resident of New Mexico, where he intends to remain.

15.     Plaintiff Barbara Laude is, and at all times mentioned herein was, an individual citizen and resident of Idaho, where she intends to remain.

16.     Ernest Health is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 1024 N. Galloway Ave., Mesquite, Texas 75149. Defendant is a citizen of Texas.  Defendant Ernest Health's registered agent for service of process is Corporate Creations Network, Inc., 5444 Westheimer, St. 1000, Houston, Texas 77056.

17.     RHSNM is a corporation organized under the laws of the state of Delaware, with its principal place of business located in Las Cruces, New Mexico. It is a citizen of Delaware.

18.     RHN is a limited liability corporation organized under the laws of the state of Delaware, with its principal place of business located in Post Falls, Idaho.  It is a citizen of Idaho.

## III.  JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs; Plaintiffs and Ernest Health are citizens of different states; and there are over 100 putative Class members.

20.     This Court has personal jurisdiction over Ernest Health because it is headquartered and has its principal place of business in the Dallas Division of the Northern District of Texas, regularly conducts business in this District, and has sufficient minimum contacts in this District.

21.     This Court has personal jurisdiction over RHSNM and RHN because they collected the Private Information that is the subject of this action on behalf of Ernest Health and they have sufficient minimum contacts in Texas, and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Dallas Division of the Northern District of Texas.

22.     Venue is proper in this Court because Ernest Health's principal place of business is in the Dallas Division of the Northern District of Texas, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Dallas Division of the Northern District of Texas.

## IV.  FACTUAL ALLEGATIONS

### A.     *Defendants' Business*

23.     As alleged above, Ernest Health is a network of rehabilitation and long-term acute care hospitals with location throughout Arizona, California, Colorado, Idaho, Indiana, Montana, New Mexico, Ohio, South Carolina, Texas, Utah, Wisconsin, and Wyoming. RHSNM operates a rehabilitation hospital in Las Cruces, New Mexico. RHN operates a rehabilitation hospital in Post

Falls, Idaho.

24.    On information and belief, Defendants accumulate the Private Information of their current and former patients.

25.    Plaintiffs provided their Private Information to Defendants in connection with health care services they received from Defendants.

26.    The information held by Defendants in their computer systems at the time of the Data Breach included Private Information of Plaintiffs and Class Members.

27.    Upon information and belief, Defendants made implied promises and representations to their patients, including Plaintiffs and Class Members, that the Private Information collected from them would be kept safe, confidential, and that the privacy of that information would be maintained.

28.    Plaintiffs and Class Members' Private Information was provided to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

29.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiffs and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

30.    Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties. Defendants have a legal duty to keep consumer's Private Information safe and confidential.

31.    Defendants had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), contract, industry standards, and representations made to Plaintiffs and Class

Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

32.     Defendants derived a substantial economic benefit from collecting Plaintiffs' and Class Members' Private Information. Without the required submission of Private Information, Defendants could not perform the health care services it provides.

33.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known they were responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

**B.**      ***The Data Breach***

34.     According to the Notices of Data Security Incident, Defendants discovered the vulnerability on February 1, 2024, but did not notify Plaintiffs and Class Members' until March 29, 2024.[5]

35.     The Notices of Data Security Incident both provide:

On February 1, 2024, we were alerted to unusual activity in our Information Technology ("IT") environment. In response, we promptly secured and isolated our IT systems. We also commenced an investigation with assistance from a third-party cybersecurity firm and have been in communication with law enforcement.

---

[5]  *See* Notice of Data Security Incident, available at https://rhsnm.ernesthealth.com/wp-content/uploads/sites/24/2024/03/Sub-notice-Rehabilitation-Hospital-of-Southern-New-Mexico.pdf; *see also* Plaintiffs' Notices of Data Security Incident, attached hereto as **Exhibit A** and **Exhibit B**.

Through our ongoing investigation, we determined that an unauthorized party gained access to our IT network between the dates of January 16, 2024 and February 4, 2024. While in our IT network, the unauthorized party accessed and/or acquired files that contain information pertaining to certain patients.[6]

36.    In the case of RHSNM, the Data Breach involved addresses, dates of birth, medical record numbers, health insurance plan member IDs, claims data, diagnosis, and/or prescription information, and, for some patients, Social Security numbers and/or driver's license numbers. In the case of RHN, the Data Breach involved addresses, dates of birth, Social Security numbers, driver's license numbers, medical record numbers, claims data, diagnosis, and/or prescription information.

37.    Omitted from the Notices of Data Breach are the details of the root cause of the Data Breach, the vulnerabilities exploited, and the specific remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

38.    This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

39.    Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when

---

[6] *Id*.

it is no longer needed.

40.    The attacker accessed and acquired files containing Private Information of Plaintiffs and Class Members. Plaintiffs' and Class Members' Private Information was accessed and stolen in the Data Breach.

41.    Plaintiffs further believes their Private Information, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

**C.    *Defendants  Acquire, Collect, and Store Plaintiffs' and Class Members' Private Information.***

42.    Defendants derive a substantial economic benefit from providing health care services to their patients, and as a part of providing that service, Defendants retain and store Plaintiffs' and Class Members' Private Information.

43.    By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties and knew or should have known they were responsible for protecting the Private Information from disclosure.

44.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

45.    Defendants' patients, including Plaintiffs and Class Members, relied on Defendants to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

46.    Defendants could have prevented this Data Breach by properly securing the files and file servers containing the Private Information of Plaintiffs and Class Members.

47.     Upon information and belief, Defendants made promises to Plaintiffs and Class Members to maintain and protect Plaintiffs and Class Members' Private Information, demonstrating an understanding of the importance of securing Private Information.

48.     Defendants' negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D.      *Defendants Knew or Should Have Known of the Risk Because Institutions in Possession of Private Information Are Particularly Suspectable to Cyber Attacks.***

49.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting institutions that collect and store Private Information, like Defendants, preceding the date of the breach.

50.     Data thieves regularly target companies like Defendants' due to the highly sensitive information in their custody. Defendants knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

51.     According to the *2023 Annual Data Breach Report*, the number of data compromises in 2023 (3,205) increased by 78 percentage points compared to 2022 (1,801).[7] The ITRC set a new record for the number of data compromises tracked in a year, up 72 percentage points from the previous all-time high in 2021 (1,860).[8]

52.     In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including HCA Healthcare (11 million patients, July 2023), Managed Care of North America (8 million patients, March 2023), PharMerica Corporation (5 million patients,

---

[7] https://www.idtheftcenter.org/publication/2023-data-breach-report/
[8] *Id.*

March 2023), HealthEC LLC (4 million patients, July 2023), ESO Solutions, Inc. (2.7 million patients, September 2023), Prospect Medical Holdings, Inc. (1.3 million patients, July-August 2023), Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

53. As a custodian of Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiffs and Class members, and of the foreseeable consequences if their data security systems were breached, including the significant costs imposed on Plaintiffs and Class Members as a result of a breach.

54. Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

55. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

56. Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' server(s), amounting to more than five thousand individuals' detailed, Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the data.

57. The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

58.     The ramifications of Defendants' failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen—particularly PHI—fraudulent use of that information and damage to victims may continue for years.

59.     As entities in possession of their patients' Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class Members and of the foreseeable consequences if their data security systems were breached. This includes the significant costs imposed on Plaintiffs and Class Members as a result of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

### E.     *Value of Personally Identifiable Information*

60.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

61.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

---

[9] 17 C.F.R. § 248.201 (2013).
[10] *Id.*

identity credentials.[11]

62.    For example, PII can be sold at a price ranging from $40 to $200.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

63.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[14]

64.    The greater efficiency of electronic health records brings the risk of privacy breaches. These electronic health records contain a lot of sensitive information (*e.g.,* patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

65.    Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[15] Indeed, during 2019 alone, over 41 million healthcare records were exposed,

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[13] *In the Dark*, POWERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

[14] *Medical I.D. Theft*, EFraudPrevention
https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20your,credit%20report%20may%20be%20affected.

[15] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/.

stolen, or unlawfully disclosed in 505 data breaches.[16] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[17]

66.    According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[18]

67.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

68.    A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[20] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[21]

69.    Based on the foregoing, the information compromised in the Data Breach is

---

[16] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/.

[17] https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-incovid-19-era-breaches/.

[18] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content.

[19] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[20] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[21] *Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One,* EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-toknow-about-them-and-what-to-do-after-one/ (last accessed July 24, 2023).

significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—PHI, dates of birth, and names.

70.      This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[22]

71.      Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

72.      The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

**F.      *Defendants Failed to Comply with FTC Guidelines.***

73.      The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

---

[22] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.
[23] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

74.    In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

75.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

76.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify

the measures businesses must take to meet their data security obligations.

77.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of their data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

78.    Defendants were at all times fully aware of their obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendants was also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information the obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

### G.    *Defendants Failed to Comply with HIPAA Guidelines.*

79.    Defendants is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

80.    Defendants is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[24] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

---

[24] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

81.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

82.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

83.    HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

84.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

85.    HIPAA's Security Rule requires Defendants to do the following:

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.    Ensure compliance by their workforce.

86.    HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendants is

18

required under HIPAA to "[i]implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

87.    HIPAA and HITECH also obligated Defendants to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

88.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[25]

89.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

90.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

91.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of

---

[25] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in

the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed

guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost

effective and appropriate administrative, physical, and technical safeguards to protect the

confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements

of the Security Rule." US Department of Health & Human Services, Security Rule Guidance

Material.[26] The list of resources includes a link to guidelines set by the National Institute of

Standards and Technology (NIST), which OCR says "represent the industry standard for good

business practices with respect to standards for securing e-PHI." US Department of Health &

Human Services, Guidance on Risk Analysis.[27]

### H.    *Defendants Failed to Comply with Industry Standards.*

92.    As noted above, experts studying cybersecurity routinely identify institutions as

being particularly vulnerable to cyberattacks because of the value of the Private Information which

they collect and maintain.

93.    Some industry best practices that should be implemented by institutions dealing

with sensitive Private Information, like Defendants, include but are not limited to: educating all

consumers, strong password requirements, multilayer security including firewalls, anti-virus and

anti-malware software, encryption, multi-factor authentication, backing up data, and limiting

which consumers can access sensitive data. As evidenced by the Data Breach, Defendants failed

to follow some or all of these industry best practices.

94.    Other best cybersecurity practices that are standard at large institutions that store

---

[26] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.
[27] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html.

Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

95.    Upon information and belief Defendants failed to meet the minimum standards of one or more of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

96.    Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

I.    *Defendants Breached Their Duty to Safeguard Plaintiffs' and Class Members' Private Information.*

97.    In addition to their obligations under federal and state laws, Defendants owed duties to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class Members.

98.    Defendants breached their obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard their

computer systems and data and failed to audit, monitor, or ensure the integrity of their data security practices. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

       a.      Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

       b.      Failing to adequately protect consumers' Private Information;

       c.      Failing to properly monitor their s own data security systems for existing intrusions;

       d.      Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

       e.      Failing to adhere to industry standards for cybersecurity as discussed above; and

       f.      Otherwise breaching their duties and obligations to protect Plaintiffs' and Class Members' Private Information.

99.      Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access their computer network and systems which contained unsecured Private Information.

100.      Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, they could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

### J.    *Common Injuries & Damages*

101.    As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiffs and Class Members has materialized and is imminent, and Plaintiffs and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their Private Information; (e) invasion of privacy; and (f) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

**K.    *The Data Breach Increases Victims' Risk of Identity Theft.***

102.    Plaintiffs and Class Members are at a heightened risk of identity theft for years to come.

103.    The Private Information of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the Private Information of Plaintiffs and Class Members.

104.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

105.     Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

106.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victim.

107.     One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Full" packages.[28]

108.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an

---

[28] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

109.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

110.    The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like driver's license numbers) of Plaintiffs and the other Class Members.

111.    Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

112.    Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

**L.    *Loss of Time to Mitigate Risk of Identity Theft and Fraud***

113.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been

lost.

114.    Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as researching and verifying the legitimacy of the Data Breach and monitoring their financial accounts for any indication of fraudulent activity, which may take years to detect.

115.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[29]

116.    These efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[30]

117.    And for those Class Members who experience actual identity theft and fraud, the GAO Report noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[31]

---

[29] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[30] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

[31] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. GOV'T ACCOUNTABILITY OFFICE, June 2007, https://www.gao.gov/ new.items/d07737.pdf ("GAO Report").

**M.**     *Diminution Value of Private Information*

118.     PII and PHI are valuable property rights.[32] Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

119.     An active and robust legitimate marketplace for Private Information exists. In 2019, the data brokering industry was worth roughly $200 billion.[33]

120.     In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[34,35]

121.     Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[36]

122.     Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[37]

---

[32] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[33] https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[34] https://datacoup.com/.

[35] https://digi.me/what-is-digime/.

[36] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel. nielsen.com/ui/US/en/faqen.html.

[37] *Medical I.D. Theft*, EFraudPrevention https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20you r,credit%20report%20may%20be%20affected.

123.     As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

124.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if their data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

125.     Defendants was, or should have been, fully aware of the unique type and the significant volume of data on their network, amounting to more than five thousand individuals' detailed personal information, upon information and belief, and thus, the significant number of individuals who would be harmed by the exposure of the data.

126.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

**N.**     ***Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary.***

127.     Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private

Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

128.    Such fraud may go undetected for years; consequently, Plaintiffs and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

129.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of five years that Plaintiffs and Class Members would not need to bear but for Defendants' failure to safeguard their Private Information.

**O.    *Plaintiffs' Experiences***

**Plaintiff Ovidio Fernandez**

130.    Plaintiff's Private Information was obtained by Defendants Ernest Health and RHSNM's in connection with their provision of health care services to Plaintiff.

131.    At the time of the Data Breach, Defendants retained Plaintiff's Private Information in their system.

132.    Plaintiff has been injured by the compromise of their Private Information.

133.    Plaintiff's Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendants' network for the specific purpose of targeting the Private Information.

134.    Plaintiff takes reasonable measures to protect his Private Information.

135.    Plaintiff stores any documents containing his Private Information in a safe and

secure location and chooses unique usernames and passwords for his online accounts.

136.    As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of uncompensated time on issues related to this Data Breach. He monitors accounts and credit scores and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and work duties.

137.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his Private Information—a form of intangible property that he entrusted to Defendants for the purpose of obtaining health care services from Defendants, which was compromised in and as a result of the Data Breach.

138.    Plaintiff suffered lost time, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

139.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

140.    Defendants obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff's Private Information was compromised and disclosed as a result of the Data Breach.

141.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**Plaintiff Barbara Laude**

142.    Plaintiff Barbara is a citizen and resident of Oldstown, Idaho.

143.    Plaintiff's Private Information was obtained by Defendants Ernest Health and RHN's (for purposes of this section, "Defendants") in connection with their provision of health care services to Plaintiff.

144.    At the time of the Data Breach, Defendants retained Plaintiff's Private Information in their system.

145.    Plaintiff has been injured by the compromise of their Private Information.

146.    Plaintiff's Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendants' network for the specific purpose of targeting the Private Information.

147.    Plaintiff takes reasonable measures to protect her Private Information.

148.    Plaintiff stores any documents containing her Private Information in a safe and secure location and diligently chooses unique usernames and passwords for her online accounts.

149.    As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. She monitors accounts and credit scores and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and work duties.

150.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that she entrusted to Defendants for the purpose of obtaining health care services from Defendants, which was compromised in and as a result of the Data Breach.

151.    Plaintiff suffered lost time, interference, and inconvenience as a result of the Data

Breach and has anxiety and increased concerns for the loss of his privacy.

152.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

153.    Defendants obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff's Private Information was compromised and disclosed as a result of the Data Breach.

154.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.  CLASS ACTION ALLEGATIONS

155.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

156.    Plaintiffs seek to represent the following Class, defined as follows:

All individuals residing in the United States whose Private Information was compromised in the Data Breach ("Class").

157.    Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

158.    Plaintiffs reserve the right to modify or amend the definition of the proposed

Class, as well as add subclasses, before the Court determines whether certification is appropriate.

159.    <u>Ascertainability</u>. All members of the Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them data breach notices.

160.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiffs believe that the proposed Class includes about hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein. The precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendants' records.

161.    <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendants engaged in the conduct alleged herein;

b.    Whether Defendants' conduct violated the federal statutes;

c.    When Defendants learned of the Data Breach;

d.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.    Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f.    Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

g.    Whether Defendants' owed duties to Class Members to safeguard their Private

Information;

h.    Whether Defendants breached their duties to Class Members to safeguard their Private Information;

i.    Whether hackers obtained Class Members' Private Information via the Data Breach;

j.    Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

k.    Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

l.    Whether Defendants knew or should have known their data security systems and monitoring processes were deficient;

m.    What damages Plaintiffs and Class Members suffered as a result of Defendants' misconduct;

n.    Whether Defendants' conduct was negligent;

o.    Whether Defendants were unjustly enriched;

p.    Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

q.    Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

r.    Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

162.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because

Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

163.    <u>Adequacy of Representation.</u> Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

164.    <u>Superiority</u>. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

165.    Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a classwide basis.

166.    Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

b.    Whether Defendants' security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c.    Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

d.    Whether Defendants failed to take commercially reasonable steps to safeguard consumer Private Information; and

e.    Whether adherence to FTC data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

## CLAIMS FOR RELIEF

### COUNT I
### Negligence and Negligence Per Se
### (On Behalf of Plaintiffs and the Class)

167.    Plaintiffs restate and reallege paragraphs 1 through 156 above as if fully set forth herein.

168.    Plaintiffs and Class Members provided their non-public Private Information to Defendants as a condition of obtaining health care services from Defendants.

169.    Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully disclosed.

170.    By assuming the responsibility to collect and store this data, Defendants had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

171.    Defendants had duties to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

172.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

173.    Defendants owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

174.    Moreover, Defendants had a duty to promptly and adequately notify Plaintiffs and Class Members of the Data Breach.

175.    Defendants had and continue to have duties to adequately disclose that the Private

Information of Plaintiffs and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

176.    Defendants breached their duties, pursuant to the FTCA, HIPAA, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.    Failing to adequately monitor the security of their networks and systems;

c.    Allowing unauthorized access to Class Members' Private Information;

d.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e.    Failing to remove former patients' Private Information it were no longer required to retain pursuant to regulations; and

f.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that it could take appropriate steps to mitigate the potential for identity theft and other damages.

177.    Defendants violated Section 5 of the FTCA and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given

38

the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

178.    Plaintiffs and Class Members were within the class of persons the FTCA and HIPPA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

179.    Defendants' violation of Section 5 of the FTCA and HIPAA constitutes negligence per se.

180.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

181.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

182.    It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches at healthcare entities.

183.    Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully disclosed.

184.    Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and Class Members,

the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on their systems.

185.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

186.    Plaintiffs and Class Members had no ability to protect their Private Information that was in, and possibly remains in, Defendants' possession. Indeed, If Plaintiffs and Class Members knew that Defendants had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendants.

187.    Defendants was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

188.    Defendants' duties extended to protecting Plaintiffs and Class Members from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

189.    Defendants have admitted that the Private Information of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

190.    But for Defendants' wrongful and negligent breaches of duties owed to Plaintiffs and Class Members, the Private Information of Plaintiffs and Class Members would not have been compromised.

191.    There is a close causal connection between Defendants' failure to implement

security measures to protect the Private Information of Plaintiffs and Class Members and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members. The Private Information of Plaintiffs and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

192.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) actual misuse of their personal information consisting of an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.

193.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

194.    Additionally, as a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect

the Private Information in their continued possession.

195.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

196.    Defendants' negligent conduct is ongoing, in that they still hold the Private Information of Plaintiffs and Class Members in an unsafe and insecure manner.

197.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
### Breach Of Implied Contract
### (On Behalf of Plaintiffs and the Class)

198.    Plaintiffs restate and reallege paragraphs 1 through 156 above as if fully set forth herein.

199.    Plaintiffs and Class Members were required to deliver their Private Information to Defendants as part of the process of obtaining healthcare services provided by Defendants. Plaintiffs and Class Members paid money, or money was paid on their behalf, to Defendants in exchange for healthcare services.

200.    Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

201.    Defendants accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

202.    Plaintiffs and Class Members entrusted their Private Information to Defendants. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendants by which

Defendants agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

203.    In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations (including HIPAA and FTC guidelines on data security) and were consistent with industry standards.

204.    Implicit in the agreement between Plaintiffs and Class Members and the Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiffs and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

205.    The mutual understanding and intent of Plaintiffs and Class Members on the one hand, and Defendants, on the other, is demonstrated by their conduct and course of dealing.

206.    On information and belief, at all relevant times Defendants promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiffs and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

207.    On information and belief, Defendants further promised to comply with industry standards and to make sure that Plaintiffs' and Class Members' Private Information would remain

protected.

208.    Plaintiffs and Class Members paid money to Defendants with the reasonable belief and expectation that Defendants would use part of their earnings to obtain adequate data security. Defendants failed to do so.

209.    Plaintiffs and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

210.    Plaintiffs and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

211.    Every contract has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

212.    Plaintiffs and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

213.    Defendants breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

214.    Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of Private Information and storage of other personal

information after Defendants knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

215.    As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiffs and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) actual misuse of their personal information consisting of an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.

216.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

217.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Class)**

218.    Plaintiffs restate and reallege paragraphs 1 through 156 above as if fully set forth herein.

219.    In light of the special relationship between Defendants and Plaintiffs and Class

Members, whereby Defendants became guardian of Plaintiffs' and Class Members' Private Information, Defendants became a fiduciary by their undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' Private Information; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

220.    Defendants had a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendants' relationship with their patients, in particular, to keep secure their Private Information.

221.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

222.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to protect the integrity of the systems containing Plaintiffs' and Class Members' Private Information.

223.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach

224.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

225.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data

Breach; (iv) loss of benefit of the bargain; (v) actual misuse of their personal information consisting of an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT IV
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

226.    Plaintiffs restate and reallege paragraphs 1 through 156 above as if fully set forth herein.

227.    Plaintiffs bring this Count in the alternative to the breach of implied contract count above.

228.    Upon information and belief, Defendants funds their data security measures entirely from their general revenue, including health care rendered from and payments made by or on behalf of Plaintiffs and Class Members.

229.    As such, a portion of the value and monies derived from Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

230.    Plaintiffs and Class Members conferred a monetary benefit on Defendants.

231.    Specifically, they purchased health care services from Defendants and/or their agents and in so doing provided Defendants with their Private Information. In exchange, Plaintiffs

and Class Members should have received from Defendants the health care services that were the subject of the transaction and have their Private Information protected with adequate data security.

233.    Defendants knew that Plaintiffs and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes.

233.    In particular, Defendants enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase their own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security.

234.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

235.    Defendants failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not provide full compensation for the benefit Plaintiffs and Class Members provided.

236.    Defendants acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

237.    If Plaintiffs and Class Members knew that Defendants had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to

Defendants.

238.    Plaintiffs and Class Members have no adequate remedy at law.

239.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) actual misuse of their personal information consisting of an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.

240.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class Members may seek restitution or compensation.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and Class)**

241.    Plaintiffs restate and reallege paragraphs 1 through 156 above as if fully set forth herein.

242.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the

protection of this information against disclosure to unauthorized third parties.

243.    Defendants owed a duty to their current and former patients, including Plaintiffs and the Class, to keep this information confidential.

244.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class members' Private Information is highly offensive to a reasonable person.

245.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

246.    The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

247.    Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

248.    Defendants acted with a knowing state of mind when they failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

249.    Acting with knowledge, Defendants had notice and knew their inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

250.    As a proximate result of Defendants' acts and omissions, the private and sensitive Private Information of Plaintiffs and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer

damages.

251.    And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

252.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Private Information is still maintained by Defendants with their inadequate cybersecurity system and policies.

253.    Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the Private Information of Plaintiffs and the Class.

254.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class members, also seek compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendants and that the Court grant the following:

  A. For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

  B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and

Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

    i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

    iv.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

    v.    prohibiting Defendants from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

vi.     requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

ix.    requiring Defendants to conduct regular database scanning and securing checks;

x.    requiring Defendants to establish an information security training program that includes at least annual information security training for all consumers, with additional training to be provided as appropriate based upon the consumers' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xi.    requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal

security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.    requiring Defendants to implement a system of tests to assess their respective consumers' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing consumers' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiii.    requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.    requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.    requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

xvi.    for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the

class, and to report any deficiencies with compliance of the Court's final

judgment;

D.   For an award of actual damages, compensatory damages, statutory damages, and

nominal damages, in an amount to be determined, as allowable by law;

E.   For an award of punitive damages, as allowable by law;

F.   For an award of attorneys' fees and costs, and any other expenses, including

expert witness fees;

G.   Pre- and post-judgment interest on any amounts awarded; and

H.   Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all issues so triable.

Dated: April 22, 2024.                    Respectfully submitted,

*/s/ Joe Kendall*
JOE KENDALL
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-525-4100
ostrow@kolawyers.com

Gary M. Klinger (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Phone: (866) 252-0878
gklinger@milberg.com

***Counsel for Plaintiffs and the Putative Class***